UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:19-cr-00386-HEA-PLC |
| | ) | |
| THOMAS G. HOBBS, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR DISCLOSURE OF UNREDACTED SEARCH WARRANT AFFIDAVIT AND INFORMATION CONCERNING THE SEIZURE OF EVIDENCE**

Comes now the United States of America, by and through its attorneys, Jeffrey B. Jensen, United States Attorney for the Eastern District of Missouri, and Dorothy L. McMurtry, Assistant United States Attorney for said District, and opposes Defendant Thomas Hobbs' "Motion for Disclosure of Un-redacted Search Warrant Affidavit and Information Concerning the Seizure of Evidence" (Doc. #17) ("Motion").

## INTRODUCTION

On February 22, 2019, U.S. Magistrate Judge Shirley Padmore Mensah ("Magistrate Judge") authorized a search of 16 Municipal Drive, Suite E, Arnold, MO 63010, the location of Power-Med, Inc., ("Power-Med"), a chiropractic clinic owned and operated by Defendant Thomas Hobbs, D.C. ("Hobbs") and his wife Vivian Carbone-Hobbs, D.C.  The Magistrate Judge authorized the search after reviewing a 65 page "Application For A Search Warrant" ("Warrant Application"), which included a 54 page affidavit ("Warrant Affidavit"), signed and

sworn to by Special Agent Emma Paredes of the Social Security Administration, Office of the Inspector General ("SSA/OIG").

In addition to the Warrant Affidavit, the Warrant Application includes three attachments. Attachment A includes a section entitled "Summary of Probable Cause" and a section entitled "Place to be Searched." Attachment B is a photo of the building located at No. 16 Municipal Drive.  Attachment C, entitled "Items to Be Seized," directs the agents to seize "instrumentalities, fruits, and evidence of violations" of federal statutes, specifically, executing a health care fraud scheme, making false statements concerning health care matters, making a false statement in an application for disability payments, concealing events that affect the right to disability payments, and theft from the federal government.  As Attachments A and C clearly indicate, the Warrant Application and the subsequent search pursuant to the warrant related to Social Security fraud and health care fraud.

The Government requested that the Warrant Application be sealed because the "items and information to be seized are relevant to an ongoing investigation into an alleged criminal conspiracy and scheme involving many targets." Warrant Aff. ¶ 189.  Appreciating that "premature disclosure of the contents of this affidavit and related documents may have significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness," the Magistrate Judge granted this request.  Warrant Aff. ¶ 189.

As authorized by the warrant, on February 27, 2019, federal agents entered Power-Med to execute the search and to seize the items identified in Attachment C.  In addition to those items, a shotgun was also seized from one of the Power-Med offices.

On May 16, 2019, Hobbs was charged by indictment with possessing the shotgun that was seized during the search of Power-Med.  The Government subsequently provided discovery materials to Hobbs, but did not disclose the un-redacted Warrant Affidavit and the interview summaries and reports related to the seizure of the shotgun.  Instead, on June 3, 2019, the Government disclosed a redacted Warrant Affidavit and the attachments thereto.

On June 6, 2019, Hobbs filed his Motion for disclosure, arguing that the redacted affidavit did not provide the information needed for him to "evaluate the sufficiency of the probable cause determination." Mot. ¶ 6.  Additionally, Hobbs requested any "reports relating to the search and seizure of evidence" made by law enforcement officers, despite conceding that he "agrees that this material would be Jencks." Mot. ¶ 10.

## ARGUMENT

## I.   DR. HOBBS' MOTION TO COMPEL DISCLOSURE SHOULD BE DENIED BECAUSE THE REDACTED MATERIAL IN THE SEARCH WARRANT AFFIDAVIT CONCERNS AN ONGOING CRIMINAL INVESTIGATION

The Eighth Circuit has held that a qualified First Amendment "right of public access does extend to the documents filed in support of search warrant applications." In re Search Warrant for Secretarial Area Outside Office of Gunn, 855 F.2d 569, 573 (8th Cir. 1988).  "Proceedings may be closed and, by analogy, documents may be sealed if 'specific, on the record findings are made demonstrating that "closure is essential to preserve higher values and is narrowly tailored to that interest."'"  Id. at 574, (citing In re New York Times Co., 828 F.2d 110, 116 (2d Cir. 1987)).

The need for continued sealing of documents may be demonstrated if the Government has a compelling government interest in protecting an on-going investigation; for example, when the documents describe the nature, scope and direction of the Government's investigation and the individuals involved.  Gunn, 855 F.2d at 574.  Continued sealing is also justified to protect the safety and identity of cooperating individuals and witnesses.  United States v. Shepard, No. 4:09-CR-423-RWS, 2010 WL 4962876, at *3 (E.D. Mo. Dec. 1, 2010) (holding unredacted search warrant documents would remain under seal).  See also, United States v. Bracy, 67 F.3d 1421, 1426-27 (9th Cir. 1995) (finding the need to protect the safety of potential witnesses justified sealing of the indictment).

In addition, continued sealing is necessary to protect the reputational and privacy interests of third parties named in the search warrant affidavits when those individuals have not been charged with a crime.  See United States v. Smith, 776 F.2d 1104, 1114-1115 (3d Cir. 1985).  In Smith, the Court upheld the sealing of a bill of particulars containing a list of uncharged individuals.  The Court stated, "…the named individuals have not been indicted and, accordingly, will not have an opportunity to prove their innocence in a trial.  This means that the clearly predictable injuries to the reputations of the named individuals is likely to be irreparable." Id. at 1113-1114.  Similar injuries result to the reputations of individuals named as under investigation in a search warrant affidavit.  Shepard, 2010 WL 4962876, at *4.

In an analogous case, the Seventh Circuit has held that defendants are not entitled to unqualified pre-indictment access to sealed affidavits in support of search warrants.  In re EyeCare Physicians of America, 100 F.3d 514, 517 (7th Cir. 1996).  In EyeCare Physicians, the

defendant had not been indicted; similarly, Dr. Hobbs has not yet been charged with Social Security fraud or health care fraud, the focus of the Warrant Affidavit.  The Seventh Circuit found that the decision whether or not to unseal a search warrant affidavit is within the discretion of the judge.  Id. at 517–518.  The Court denied the defendant's asserted Fourth Amendment right to access a sealed search warrant affidavit, finding that "the text of [the Fourth] Amendment does not address, even implicitly, the problem of lack of access to sealed search warrant affidavits."  Id. at 517.  In particular, the court emphasized the adverse consequences of compelling the disclosure:

> Consequences in disclosing the sealed affidavits include: the identity of unnamed subjects not yet charged would be revealed; there may be mistaken notions concerning who might and might not be cooperating with the government or who may be subjects; there may be misunderstandings about the parameters of the government's investigation; the privacy of the innocent and the implicated would be threatened; and the cooperation of present and potential witnesses could be compromised or influenced.  We add that *disclosing even a redacted version of the search warrant affidavit would enable the subjects of the investigation the opportunity to alter, remove or withhold records*.

Id. at 519 (emphasis added).  The magistrate and district court judges, the Seventh Circuit determined, must evaluate these consequences, and, where they weigh in favor of the government, keep the search warrant affidavits under seal.  Id.

In evaluating a disclosure request, protecting the integrity of an ongoing government investigation is sufficient reason for a judge to keep a search warrant affidavit under seal.  Id.  The likelihood that such a disclosure might "impair the ongoing criminal investigation" justified the magistrate's decision to keep the affidavit under seal.  Id.

Importantly, several other federal appellate courts endorse this proposition.  See In re Grand Jury Proceedings, 115 F.3d 1240, 1246, (5th Cir. 1997) (citing with approval the Seventh Circuit's conclusion that "no provision within the Fourth Amendment grants a fundamental right of access to sealed search warrant affidavits before an indictment"); In re Ares Armor, 206/208 N. Freeman St., Oceanside, 687 F. App'x 622, 625 (9th Cir. 2017) ("the lone circuit court to consider whether there is a pre-indictment Fourth Amendment right to access a sealed search warrant affidavit concluded that there is not"); In re Search of Fair Finance, 692 F.3d 424, 431, (6th Cir. 2012) (citing Seventh Circuit's denial of an unqualified right of access to sealed search warrant affidavits to defendants as being equally applicable to the press); Bartholomew v. Pennsylvania, 221 F.3d 425, 429 n.5 (3d Cir. 2006) (recognizing Seventh Circuit's analysis of the "adverse consequences which may result" from unsealing search warrant affidavits).

Even the Fourth Circuit – the only circuit to stray from the EyeCare Physicians standard – considers protecting an ongoing government investigation sufficient to keep a search warrant affidavit under seal.  In an unpublished opinion, the Court held that even if "a defendant is entitled under the Fourth Amendment to examine the affidavit that supports a warrant after the search has been conducted, this right is not absolute."  United States v. Oliver, No. 99-4231, 2000 WL 263954, at *2 (4th Cir. Mar. 9, 2000).  In Oliver, the district court had held that disclosure "may be denied only where … a compelling governmental interest requires the materials be kept under seal and there is no less restrictive means, such as redaction, available." Id.  The Fourth Circuit found the risk "that [the] release of the full affidavit would jeopardize the

Government's ongoing investigation and place the lives of important witnesses in danger"
constituted a compelling governmental interest.  Id. at *1.

As recognized by the Magistrate Judge in the instant case, the "ongoing investigation into
an alleged criminal conspiracy and scheme [involves] many targets . . . and the premature
disclosure of the contents … may have a significant and negative impact on the continuing
investigation and may severely jeopardize its effectiveness."  Warrant Aff. ¶ 189.  These
concerns are still present.  Thus, the un-redacted Warrant Affidavit should remain under seal.

## II.   THE SHOTGUN WAS SEIZED UNDER THE PLAIN VIEW EXCEPTION TO THE WARRANT REQUIREMENT

The Government does not rely on the search warrant as a basis for the seizure of the
shotgun from Power-Med.  Instead, the Government asserts that the shotgun was legally seized
under the plain view exception to the Fourth Amendment warrant requirement.  The question
then becomes whether Hobbs needs or is entitled to disclosure of the un-redacted Warrant
Application to challenge the seizure of the shotgun under a plain view exception.  The answer,
clearly, is no.

"The plain view doctrine permits the warrantless seizure of evidence if the officers are
lawfully in a position from which they view the object, the incriminating character of the object
is immediately apparent, and the officers have a lawful right of access to the object." United
States v. Evans, 830 F.3d 761, 764 (8th Cir. 2016) (citations omitted); United States v. Banks,
514 F.3d 769, 774 (8th Cir. 2008) (citing Horton v. California, 496 U.S. 128, 136-37 (1990)).
"Observing objects in plain view violates no reasonable expectation of privacy, which obviates
the need for a search warrant."  Banks, 514 F.3d at 773.  "Some containers (for example ... *a gun*

*case*) by their very nature cannot support a reasonable expectation of privacy because their contents can be inferred from their outward appearance."  Id.  (citations omitted) (emphasis in original); see also United States v. Miller, 929 F.2d 364, 364-65 (8th Cir. 1991) (affirming a district court's determination that no warrant was necessary to search a bag whose size and shape suggested it contained a gun).

### A.  Federal Agents Were Lawfully in Position to View Shotgun

Hobbs appears to obliquely concede that the agents were lawfully on the premises of Power-Med when they observed the shotgun.  Mot. ¶ 10 ("while the government may rely on the warrant to justify the entry . . . into the premises …").  There can be no credible dispute about this fact – the federal agents were lawfully on the premises of Power-Med executing a warrant authorized by the Magistrate Judge for electronic and paper documents and files.

Nonetheless, Hobbs contends that the un-redacted Warrant Affidavit must be disclosed so he can challenge the probable cause of the warrant and the subsequent seizure of the shotgun. The Government disagrees.  The probable cause statement in the Warrant Affidavit is irrelevant to the seizure of the shotgun because the Government is relying on the plain view exception as the basis for seizing the shotgun.

Although the Government does not believe that a probable cause determination is necessary at this point in these proceedings, this Court may conduct an *in camera* review of the information within the four corners of the Warrant Application.  As this Court will see from such a review, the existence of probable cause for the seizure of the items listed on Attachment C is not a close call.  The 38 redacted pages of the Warrant Affidavit (pp. 7-45) include interviews of

persons familiar with Dr. Hobbs' professional qualifications and practice; fraud complaints

submitted by members of the public; a review by the SSA/OIG Fraud Prevention Unit of selected

medical records of Dr. Thomas Hobbs and Dr. Carbone-Hobbs; the results of undercover

operations, including physical and video recorded surveillance, of numerous patients of Hobbs

and Dr. Carbone-Hobbs; analysis of bank records of Power-Med and selected patients; and

reviews of disability applications and related documents.  The overwhelming amount of detailed,

relevant information in the Warrant Affidavit unquestionably establishes probable cause.  See

United States v. O'Dell, 766 F.3d 870, 873 (8th Cir. 2016) (Courts "accord great deference to a

magistrate's determination as to whether an affidavit establishes probable cause").

### B.  The Shotgun Was in Plain View

Here, the agent, who seized the shotgun, saw a gun case in plain view.  As reflected in the

attached photo (Attachment 1), the gun case was "readily identifiable as a single-purpose

container whose distinctive configuration allow[ed] police to infer its contents."  Banks, 514

F.3d at 774 (citations omitted).  It was readily apparent from the length, width, and shape of the

case that it was a gun case.

### C.  The Agents Knew Hobbs Was a Felon and Could Not Legally Possess a Firearm

The third requirement, that the incriminating character of an item be immediately

apparent, is satisfied when police have "probable cause to associate the property with criminal

activity."  United States v. Raines, 243 F.3d 419, 422 (8th Cir. 2001) (internal quotation marks

omitted).  The possession of a firearm by a convicted felon is, pursuant to 18 U.S.C. 922(g), a

federal crime.

At any future hearing challenging the seizure of the shotgun, the Government will offer the following evidence.  During the search, a federal agent asked a Power-Med employee if there were any guns on the premises.  The Power-Med employee indicated that there was and told the agents that Hobbs and/or Dr. Carbone-Hobbs had brought the gun to Power-Med from their home because they were concerned for their son's safety.  Thereafter, an agent saw what he recognized was a gun case in one of the Power-Med offices.

After photographing the gun case, the agents opened the case and found a shotgun. Because Special Agent Paredes had been involved in a long-running investigation of Hobbs, she and other agents knew, before the shotgun was seized, that Hobbs was a convicted felon and thus could not legally possess a firearm.

## III.   INTERVIEW SUMMARIES AND OTHER INTERNAL REPORTS ARE NOT DISCOVERABLE EXCEPT AS PERMITTED BY RULE 16(a)(2) AND JENCKS       ACT

Hobbs' Motion to compel the disclosure of summaries and reports made by government agents should be denied.  The Government may not be compelled to disclose interview summaries or other internal documents related to the investigation of this case, except as required by the Jencks Act and Fed. R. Crim. P. 16(a)(2) which provides:

> Except as permitted by Rule16(a)(1)(A)-(D), (F), and (G), this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case.  Nor does this rule authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500.

See United States v. Willis, 997 F.2d 407, 413-14 (8th Cir. 1993); United States v. Frederick, No. CR 10–30021–RAL, 2010 WL 3981421, at *2-3 (D.S.D. Oct. 6, 2010), (citing United States

v. Rudolph, 224 F.R.D. 503, 511 (N.D. Ala. 2004)) (holding Rule 16(a)(2) limits discovery and a defendant cannot discover information protected by Rule 16(a)(2) even though the information falls within Rule 16(a)(1)(E)); United States v. Fort, 472 F.3d 1106, 1110 n.2 (9th Cir. 2007) (agreeing with the Rudolph court's analysis).

Interview summaries are typically prepared by federal agents or other law enforcement officers and are discoverable as Jencks statements only if the agents or officers testify at trial concerning matters contained in the interview summaries.  Further, courts have uniformly held that interview summaries are not Jencks statements of the witnesses interviewed, unless the summaries are substantially verbatim accounts of what the witnesses said during the interviews or the witnesses have approved or adopted the interview summaries.  See Palermo v. United States, 360 U.S. 343, 355 n.12 (1959) (holding that agent's brief summary of witness' statements prepared after interview did not constitute "statements" under Jencks Act); United States v. Price, 542 F.3d, 617, 621 (2008) (citing Kane v. United States, 431 F.2d 172, 174 (8th Cir. 1970)) (FBI agent's notes were not a "witness statement" within the act because there was no evidence that the witness adopted or approved what was recorded); United States v. Wright, 540 F.3d 833, 842 (8th Cir. 2008) (government agent's interview notes not discoverable under Jencks Act as they would consist solely of the agent's interpretations or impressions), cert. denied, 556 U.S. 1238 (2009); United States v. Malone, 49 F.3d 393, 396 (8th Cir. 1995) (holding that government's failure to turn over a Secret Service agent's notes from an interview with a government witness was not a violation of Rule 16 because the agent's notes "constitute the agent's impression of his interview with [the witness], not a statement by the [the witness].");

11

United States v. Jordan, 316 F.3d 1215, 1252 (11th Cir. 2003) (interviewer's raw notes, and anything prepared from notes, such as FBI 302, are not Jencks statements of witness unless they are substantially verbatim and contemporaneously recorded, or were signed or otherwise ratified by witness); United States v. Gates, 557 F.2d 1086, 1089 (5th Cir. 1977), cert. denied, 434 U.S. 1017 (1978) (notes are not Jencks statements until shown to and affirmed by witness).

Here, the reports of law enforcement officers sought by Hobbs consist of "reports, memoranda, or other internal government documents" made in connection with ongoing investigations.  In the Motion, Hobbs broadly requests any "reports relating to the search and seizure of evidence" made by government officials.  Mot. ¶ 10.  This material has been amassed as part of an ongoing government investigation, and is precisely what Rule 16(a)(2) is designed to protect.  The vagueness of Hobbs' request, combined with the materials' undisputed relation to an ongoing investigation, means that it is, pursuant to Rule 16(a)(2), not subject to disclosure.

Likewise, the fact that the requested "reports, memoranda, or other internal documents" were created by federal agents who are prospective government witnesses means that they are, in accordance with the Jencks Act, immune from discovery until after they testify.  The defense even concedes this.  Mot. ¶ 10.  Only in instances where the prosecution possesses "evidence favorable to an accused," may defendants gain pretrial access to materials that would otherwise qualify as Jencks material.  Brady v. Maryland, 373 U.S. 83, 87 (1963).  None of the material sought by Hobbs is even contended to be exculpatory, and therefore the Brady exception does not apply.

## CONCLUSION

For the aforementioned reasons, the Government respectfully urges the Court to deny

Defendant Hobbs' "Motion for Disclosure of Unredacted Search Warrant Affidavit and

Information Concerning Seizure of Evidence."


Respectfully submitted,

JEFFREY B. JENSEN
United States Attorney


*/s/ Dorothy L. McMurtry*
DOROTHY L. McMURTRY, #37727MO
Assistant United States Attorney
111 South 10th Street, Room 20.333
St. Louis, Missouri  63102
(314) 539-2200

13

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 19, 2019, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.

*/s/ Dorothy L. McMurtry*
DOROTHY L. McMURTRY, #37727MO
Assistant United States Attorney

14